IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROLAND S. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:10cv362-SRW |
| | ) | |
| MICHAEL ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

Plaintiff Roland Williams brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability and disability insurance benefits and for supplemental security income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## BACKGROUND

Plaintiff worked in utility construction between 1985 and 2001, supervising other employees and operating heavy equipment, and as a truck driver for the City of Andalusia between 2001 and 2004. (R. 171, 728). He filed the present applications on June 11, 2007, when he was forty-one years old, alleging that he became disabled on May 20, 2004, due to Hepatitis C, back pain, high blood pressure and depression. (R. 695, 715-20, 728-30). After

plaintiff's claims were denied initially, plaintiff requested a hearing before an ALJ, which was held on June 24, 2009.  (R. 665-73, 964-90). The ALJ issued a decision on September 4, 2009, concluding that plaintiff had severe impairments of degenerative disc disease of the lumbar spine, borderline intellectual functioning, and right knee effusion, but that he did not have an impairment or combination of impairments that met or medically equaled a listing. (R. 614-15).  The ALJ found that plaintiff retained the residual functional capacity to perform the exertional requirements of light work, with additional non-exertional restrictions. (R. 616).  The ALJ determined that, while plaintiff's RFC precluded performance of his past relevant work, there are other jobs existing in significant numbers in the national economy that plaintiff can perform.  (R. 620-21).[1]  Plaintiff sought review of the ALJ's unfavorable

---

[1] Plaintiff filed a previous claim for disability insurance benefits, alleging disability on the basis of Hepatitis C, on February 27, 2002.  The claim was denied at the initial administrative level on April 5, 2002. (R. 46-47, 71-74, 94-136, 167).  Plaintiff filed a second claim for disability insurance benefits on September 3, 2004, alleging disability since May 20, 2004 due to Hepatitis C, "bad back," and "heat stroke." (R. 48-49, 76-80, 170).  This second claim was denied initially on December 29, 2004, and, after a hearing and supplemental hearing, an ALJ issued an unfavorable decision on January 16, 2007.  (See R. 19-27, 48-49, 570-602, 647-58).  The Appeals Council denied review and, on September 4, 2008, Judge Wallace Capel entered judgment affirming the Commissioner's decision denying plaintiff's claim.  (R. 8-11, 684-94; Civil Action No. 2:07CV699-WC).  In the decision now under review, the ALJ rejected plaintiff's contention that administrative *res judicata* did not apply.  She concluded that the evidence submitted on the present claim did not establish that plaintiff was under a disability during the period adjudicated previously and that, as to that period, there was no new and material evidence.  She determined that the relevant period remaining for adjudication began on "the date after the prior Administrative Law Judge decision."  The ALJ's reference to this date as January 17, *2006,* is an obvious typographical error; the date of the previous ALJ decision was January 16, *2007*.  (R. 611, 763). While the ALJ framed the finding as regarding reopening, the new evidence cited by plaintiff was not submitted to the Commissioner until May 27, 2009 – more than four years after the initial determination issued on the previous claim – and plaintiff acknowledged that the period for reopening had passed.  (R. 763, 851-90).  The error, if any, in the ALJ's reference to reopening is harmless, as the *res judicata* determination in this case depends on resolution of the same issue – *i.e.*, whether there is new evidence material to the issue of disability during the previously adjudicated period.  See 20 C.F.R. § 404.957(c)(1); 404.988(b); 404.989(a)(1); SSR 68-12A; HALLEX I-2-4-40(J); POMS DI 27510.005(D)(2). Plaintiff does not argue that the ALJ erred in applying administrative *res judicata* based on his previous claim for benefits.

decision by the Appeals Council. The Appeals Council considered additional evidence submitted by the plaintiff but denied review on February 26, 2010, concluding that the additional evidence did not provide a basis for changing the ALJ's decision. (R. 603-06). Plaintiff filed the present appeal on April 28, 2010.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff raises three issues in his appeal to this court:

3

1.  The ALJ erred in basing [her] decision on [her] own interpretation of the medical record, having rejected the opinion of every examining and treating physician.

2.  The Appeals Council erred in rejecting the opinion of the long-term treating physician, Paul F. Ketcham, MD.

3.  The ALJ erred in relying on vocational expert testimony that is inconsistent with the Dictionary of Occupational Titles (DOT).

(Plaintiff's brief, p. 2).

<u>Conflict Between VE Testimony and DOT</u>

At the administrative hearing, a vocational expert testified that a hypothetical individual limited as described by the ALJ[2] – including the option to "sit, stand, or walk for one hour at a time before needing to change positions for at least 10 minutes" – could perform jobs as a housekeeper cleaner, ticket taker, and microfilm processor.  (R. 981-83).  The VE responded affirmatively when the ALJ asked, "Is your testimony consistent with the <u>Dictionary of Occupational Titles</u>?" (R. 984).  The ALJ relied on the VE's testimony in response to her hypothetical question and found that the VE's testimony "is consistent with the information contained in the Dictionary of Occupational Titles." (R. 621). Plaintiff argues that "Social Security Ruling 00-4p requires the ALJ to determine whether a conflict exists between a VE's testimony and the DOT, and further that the ALJ must elicit a reasonable explanation for the conflict."  (Plaintiff's brief, p. 7).  Plaintiff maintains that "[t]he DOT does not contain any jobs that allow for a sit/stand option, particularly not to the degree

---

[2]  The ALJ's hypothetical question included all of the limitations included in her RFC finding.  (<u>See</u> R. 616, 981-82).

specified by the ALJ."  (Id.).

In Zblewski v. Astrue, 302 Fed. Appx. 488 (7th Cir. 2008), the Seventh Circuit considered a substantially similar argument.  The court concluded that, "[b]ecause the DOT does not address the subject of sit/stand options, it is not apparent that the [VE] testimony conflict[ed] with the DOT" and, accordingly, that the ALJ was not required to ask the VE to explain to conflict.  Id. at 494.  In the present case, plaintiff points to no authority in support of his argument that the VE testimony conflicts with the DOT, and the VE testified – in response to a direct question from the ALJ – that her testimony was consistent with the DOT. The court concludes that the ALJ committed no error by failing to elicit an explanation for a conflict which the VE testified does not exist and which concerns an issue not addressed expressly in the DOT.  In the Eleventh Circuit, an ALJ is entitled to rely on vocational expert testimony even when it conflicts with the Dictionary of Occupational Titles.  Jones v. Apfel, 190 F.3d 1224 (11th Cir. 1999).[3]  Plaintiff's argument is, therefore, without merit.

<u>The ALJ's RFC Determination</u>

Plaintiff further contends that the Commissioner's decision is due to be reversed because the ALJ based her RFC assessment "on her own interpretation of the medical record, having rejected the opinion of every examining and treating physician." (Plaintiff's brief, p. 2).  Plaintiff points out that SSR 83-10 defines the RFC as a "medical assessment of what an

---

[3] Although SSR 00-04p post-dates the decision in Jones, the Eleventh Circuit has recently reaffirmed its holding. See Hurtado v. Astrue, 2011 WL 1560654 (11th Cir. Apr. 25, 2011), and Jones v. Astrue, 2011 WL 1490725 (11th Cir. Apr. 19, 2011).

individual can do in a work setting" and argues that, after the ALJ rejected the opinions of treating physician Boyington and examining physician Mitchell, the record contained no "opinion of any examining physician that supports the ALJ's RFC assessment." (Plaintiff's brief, pp. 4-5). He contends that the ALJ "therefore had to develop a RFC based on his own interpretation of the medical records," and that "[t]his is error." (Id.). In short, plaintiff's position is that the ALJ cannot – without a supporting RFC opinion from an examining source – render an RFC finding based on substantial evidence. However, contrary to plaintiff's argument, the Commissioner's RFC assessment may have substantial evidentiary support, even in the absence of an opinion from an examining medical source about plaintiff's functional capacity. See Green v. Social Security Administration, 223 Fed. Appx. 915, 923 (11th Cir. 2007)(unpublished opinion)(ALJ's RFC assessment supported by substantial evidence where he rejected treating physician's opinion properly and formulated the plaintiff's RFC based on treatment records, without a physical capacities evaluation by any physician).[4]

---

[4] The Eleventh Circuit stated:

> Green argues that once the ALJ decided to discredit Dr. Bryant's evaluation, the record lacked substantial evidence to support a finding that she could perform light work. Dr. Bryant's evaluation, however, was the only evidence that Green produced, other than her own testimony, that refuted the conclusion that she could perform light work. Once the ALJ determined that no weight could be placed on Dr. Bryant's opinion of the Green's limitations, the only documentary evidence that remained was the office visit records from Dr. Bryant and Dr. Ross that indicated that she was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. Thus, substantial evidence supports the ALJ's determination that Green could perform light work.

223 Fed. Appx. at 923.

Plaintiff argues that the reasons stated by the ALJ for rejecting the opinions of Dr. Boyington and Dr. Mitchell are not supported by the record. Dr. Boyington completed functional capacity assessment forms and clinical assessment of pain forms on March 3, 2005, and July 18, 2005. In both sets of forms, Dr. Boyington included disabling functional limitations. (R. 891-95). Dr. Mitchell examined plaintiff on February 5, 2009, and completed functional capacity and pain assessment forms which also include disabling limitations. (R. 887-90, 985-86 (VE testimony regarding Dr. Mitchell's assessment)). "If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight." Roth v. Astrue, 249 Fed. Appx. 167, 168 (11th Cir. 2007)(unpublished opinion)(citing 20 C.F.R. § 404.1527(d)(2)). "If the treating physician's opinion is not entitled to controlling weight, ...'the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.'" Id. (citing Crawford v. Commissioner, 363 F.3d 1155, 1159 (11th Cir. 2004)). "If the ALJ finds such good cause and disregards or accords less weight to the opinion of a treating physician, he must clearly articulate his reasoning, and the failure to do so is reversible error." Pritchett v. Commissioner, Social Security Admin, 315 Fed. Appx. 806 (11th Cir. 2009)(unpublished opinion)(citing MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)). "When the ALJ articulates specific reasons for not giving the treating physician's opinion controlling

weight, and those reasons are supported by substantial evidence, there is no reversible error. Schuhardt v. Astrue, 303 Fed. Appx. 757, 759 (11th Cir. 2008)(unpublished opinion)(citing Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005)).  The Eleventh Circuit has found good cause for discounting a treating physician's report when the report "'is not accompanied by objective medical evidence or is wholly conclusory.'" Crawford, *supra* (quoting Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir.1991)).  Additionally, there is good cause where the treating physicians' opinions are "inconsistent with their own medical records," Roth, *supra* (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) or "when the opinion appears to be based primarily on the claimant's subjective complaints of pain." Freeman v. Barnhart, 220 Fed. Appx. 957, 960 (11th Cir. 2007)(citing Crawford, *supra*).  Dr. Mitchell's opinion, as that of a one-time examiner (see R. 972), is not entitled to the deference accorded to the opinions of treating physicians.  McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987)(opinions of two physicians were "not entitled to deference because as one-time examiners they were not treating physicians").  "The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion.  Carson v. Commissioner of Social Sec., 373 Fed. Appx. 986, 988 (11th Cir. Apr. 20, 2010)(citing Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985)).

The ALJ assigned little weight to Dr. Boyington's opinion because: (1) it is not supported by the treatment notes or objective tests; (2) Dr. Boyington "has not treated the claimant during the relevant period of adjudication"; (3) in his treatment notes and work

release forms, Dr. Boyington indicated repeatedly that plaintiff was capable of "light work"; and (4) in March 2005, when he completed the first set of forms, Dr. Boyington noted that he based his findings on the claimant's input and subjective allegations. (R. 620). Plaintiff argues that the record demonstrates that Dr. Boyington treated plaintiff from 2002 through 2006, "well within the relevant period of adjudication." (Plaintiff's brief, p. 3). The last treatment note from Dr. Boyington is dated January 6, 2006. (R. 527). This last office visit occurred a year and a half after plaintiff's alleged onset date of May 20, 2004. However, as noted above (*supra* n. 1), the ALJ determined that plaintiff had presented no new and material evidence as to the period adjudicated in plaintiff's previous application and, accordingly, that the period remaining for adjudication began on the day following the ALJ's decision in the previous case, or January 17, 2007 – a year after plaintiff's last visit to Dr. Boyington and eighteen months after Dr. Boyington completed the last set of forms.[5]

Additionally, in the several months immediately following plaintiff's injury at work, Dr. Boyington released plaintiff to "light work," as the ALJ observed. Plaintiff argues that Dr. Boyington did not define "light work" and, therefore, that his view of what constitutes light work is not necessarily consistent with light work as defined in the Commissioner's regulations. He further maintains that the ALJ "ignored" the occasion in June 2004 on which Dr. Boyington limited him to sedentary work. (Plaintiff's brief, p. 3). The record supports

---

[5] The court declines to construe plaintiff's isolated reference to the relevant period of adjudication – in the context of his argument that the ALJ's stated reasons for rejecting Dr. Boyington's opinion are not supported in the record – as an argument that the ALJ erred in finding *res judicata* applicable to the period adjudicated in the prior application.

the ALJ's observation that Dr. Boyington released plaintiff to "light work." As plaintiff argues, the work release forms signed by Dr. Boyington – which used the terms "light work" and "light duty" – do not define the terms.  As plaintiff further notes, Dr. Boyington limited plaintiff to "sedentary only" while releasing him to light duty in June 2004. On other occasions, Dr. Boyington included lifting restrictions inconsistent with the exertional requirements of light work as defined in the Commissioner's regulations.  (See R. 373, 376, 379, 381, 388, 389).   While it is clear that Dr. Boyington's work release forms do not equate to an opinion that plaintiff can perform the exertional requirements of light work as defined in the Commissioner's regulations, it is equally clear that Dr. Boyington determined that plaintiff was capable of performing full-time work.  (See R. 357)(letter from Dr. Buchalter – a pain management specialist who saw plaintiff on referral from Dr. Boyington – to Dr. Boyington stating, "We will defer to the patient's previous work restrictions of light duty work on a full-time basis[.]").  As the Commissioner argues, Dr. Boyington's physical examination findings for the remaining period of treatment do not suggest a deterioration in plaintiff's condition that would account for Dr. Boyington's more restrictive assessments in the forms he completed in March and July 2005, in which he concluded that plaintiff is capable of performing a limited range of sedentary work, but only on a part-time basis.  (See R. 362-401, 527-38, 891-95).  In discounting Dr. Boyington's restrictive assessment, the ALJ observed that Dr. Boyington's note in March 2005, when he completed the first set of forms, reflects that he "based his findings on the claimant's own input and subjective allegations."

10

(R. 620).  This observation is supported by the record.  In the March 10, 2005, note, Dr.

Boyington states, "Discussed [with] case worker that PCE was filled out with patient's input

+ subjective complaints."  (R. 364).  Thus, the ALJ articulated good cause, supported by

evidence of record, for assigning little weight to Dr. Boyington's opinion.[6]

As noted above, Dr. Mitchell examined plaintiff but is not a treating physician.  The

ALJ assigned little weight to Dr. Mitchell's opinion.  (R. 618, 619-20).  Plaintiff argues:

> The ALJ rejected Dr. Mitchell's opinion, finding it inconsistent with the
> findings of the examination.  (Tr. 619).  However, the exam included limited
> forward flexion of the neck, limited motion of flexion and rotation of the back
> and tenderness in the lumbosacral paraspinous musculature.  (Tr. 888).

(Plaintiff's brief, p. 4).  In a pain form, Dr. Mitchell circled responses to indicate that plaintiff

suffers from "profound and intractable, virtually incapacitating" pain which, with physical

activity, would increase "to such an extent that bed rest and/or medication is necessary."  (R.

890).  However, in an FCE form completed on the same day, Dr. Mitchell determined that

plaintiff is able to sit for six hours and stand or walk for four hours in an eight-hour work day

and that he can lift ten pounds occasionally and five pounds frequently.  He included non-

exertional limitations, and predicted that plaintiff would miss work "[a]bout three times a

month."  Dr. Mitchell explained the medical bases for the restrictions as "Decreased range

of motion in back & knee; weight loss, generalized debility from hepatitis."  (R. 889).

---

[6] In appealing the Commissioner's decision on his earlier claim, plaintiff argues that the ALJ had
erred in rejecting these same opinions from Dr. Boyington. The court determined that the ALJ was entitled
to discount the opinion because it was "conclusory and inconsistent with his own treatment notes, and was
not bolstered by the evidence."  (R. 352-54, 503-04, 689, 691).

In his physical examination, Dr. Mitchell did note limited range of motion in plaintiff's neck and back. However, he noted no abnormalities in the examination of plaintiff's extremities, finding "[n]o clubbing, cyanosis, or edema," intact pedal pulses bilaterally, and that plaintiff's "distal extremities are not abnormally cool or cyanotic." He did not include any notation of limited range of motion of plaintiff's knee. His examination report does not indicate that he reviewed any of plaintiff's medical records or ordered any objective testing. He did not record plaintiff's weight. Dr. Mitchell's impression, however, was: "Disabled secondary to hepatitis C, lumbosacral disc disease. Recurrent right knee effusion with history of torn meniscus. Gastrointestinal bleeding with history of gastric ulcer." (R. 887-88). A large portion of Dr. Mitchell's report consists of plaintiff's report of his medical history, and it appears that Dr. Mitchell's opinion was based in large part on plaintiff's report of a twenty pound weight loss, anorexia, malaise, and a torn meniscus with recurrent knee effusion. (R. 887).

The record includes detailed treatment notes from Dr. Gacha, plaintiff's treating physician from at least January 2005 (see R. 773) through November 2008 (see R. 860). On November 6, 2008, when plaintiff sought treatment for abdominal pain lasting for two or three days, Dr. Gacha recorded plaintiff's report of no weight changes or change in appetite (R. 860), and no pain or limitation of motion of muscles or joints (R. 861). On November 10, 2008 – a mere three months before Dr. Mitchell's examination – Dr. Gacha noted that

plaintiff's knee was "normal to inspection and palpation,"[7] that his "[d]eep tendon reflexes were 2+/4+ and symmetrical," and that his gait was intact and his station and posture normal. (R. 864-65). He noted, a "normal" musculoskeletal examination of plaintiff's head and neck, with no tenderness.[8]  (R. 865).   Plaintiff exhibited "[b]ilateral lower paraspinal muscle tenderness" on examination and reported joint pain and swelling and lower back pain (R. 863, 865), but he denied limitation of motion, radicular pain, weakness, numbness, tingling or burning, and reported tolerating his medication (Lortab and Soma) well.  (R. 862, 866). With regard to plaintiff's GI bleeding, Dr. Gacha noted that plaintiff's symptoms had improved and that his recent laboratory work and GI studies were "normal." (R. 862). Plaintiff's weight was 227 lbs, an increase of five pounds since his previous visit four months earlier (R. 862, 867).  On that visit, in July 2008, Dr. Gacha noted bilateral lower paraspinal muscle tenderness and patellar tenderness on examination, but plaintiff's gait was intact and his station and posture normal, his deep tendon reflexes 2+/4+ and symmetrical, and musculoskeletal examination of his neck was normal.  (R. 869).  In his review of symptoms, Dr. Gacha noted "[n]ormal activity and energy level, no change in appetite.  No major weight gain or loss.  No fatigue, general feeling of being ill, [or] malaise[.]" (R. 867).

_____

[7]  Dr. Gacha first treated plaintiff for knee pain on August 27, 2007, when plaintiff reported sudden onset of moderate right knee pain two days previously, after he twisted his knee while walking. (R. 875). Dr. Gacha diagnosed joint effusion of new onset, and aspirated the joint.  (R. 877-78).  He noted patellar tenderness on examination on that date.  In December 2007, Dr. Gacha noted patellar tenderness and assessed "joint effusion."  (R. 871-74).  In July 2008, he noted patellar tenderness, but made no diagnosis of joint effusion.  (R. 867-70).

[8]  Plaintiff sought treatment for congestion, sneezing and fever and Dr. Gacha noted tenderness to palpation of plaintiff's frontal and maxillary sinuses.  (R. 864).

Dr. Gacha's note for December 2007, fourteen months before Dr. Mitchell's examination, reflects that plaintiff was then complaining of knee pain and some back pain, but reported that his low back pain was improved.  He denied "persistent pain," spasms, radicular pain or limitation of motion and reported that the medication was "well tolerated." (R. 871).  Dr. Gacha noted patellar tenderness and paraspinal muscle tenderness, but normal sensation, deep tendon reflexes of 2+/4+ symmetrically, intact gait, normal station and posture, and normal inspection of plaintiff's neck.  (R. 873).  In May 2007, Dr. Gacha noted no kyphosis, lordosis or tenderness on examination of plaintiff's spine, and reported normal examination of plaintiff's neck.  He noted symmetrical deep tendon reflexes of 2+/4+ , intact gait, normal station and posture.  Plaintiff reported lower back pain, but stated that it had improved.  He denied persistent pain, spasms or radicular pain.  (R. 879-81).  In August 2006, plaintiff weighed 208 pounds.  (R. 830).  He gained weight thereafter and, between January 2007 and  November 2008, his weight remained relatively constant, with the lowest weight at 220 pounds and the highest at 228 pounds.  (R. 862, 867, 871, 228, 879, 883).  The record supports the ALJ's determination that Dr. Mitchell's opinion was entitled to little weight.

The ALJ properly rejected the opinions of Dr. Mitchell and Dr. Boyington.  The court finds plaintiff's contention that she erred by formulating an RFC without a supporting functional capacity assessment from a treating or examining physician without merit.

<u>The Appeals Council's Rejection of Dr. Ketcham's Opinion</u>

In support of his request for review by the Appeals Council, plaintiff submitted additional medical records, including treatment records from Dr. Paul Ketcham, and Dr. Ketcham's opinion – expressed in a medical source statement form and a clinical assessment of pain form – that plaintiff has disabling functional limitations and pain.  (R. 901-30). Plaintiff's contention that the Appeals Council erred in denying review in light of Dr. Ketcham's opinion is also without merit.  The Appeals Council "may deny review if, even in the light of the new evidence, it finds no error in the opinion of the ALJ."  Pritchett v. Commissioner, Social Security Administration, 315 Fed. Appx. 806, 814 (11th Cir. 2009)(unpublished opinion)(citing Ingram, 496 F.3d at 1262). The Appeals Council concluded that the additional evidence submitted to it by the plaintiff "[did] not provide a basis for changing the Administrative Law Judge's decision."  (R. 604).[9]

The medical records that plaintiff submitted to the Appeals Council include treatment notes from Dr. Ketcham which are most often cursory, covering a forty year span of treatment in 24 pages, including reports of objective testing and the admission physical

---

[9] Plaintiff argues that "Dr. Ketcham has treated Mr. Williams for over forty years." (Plaintiff's brief, p. 5).  The Commissioner responds that "[i]t is far from clear that Dr. Ketch[am] was in fact Plaintiff's treating physician as Plaintiff suggests" because, while treatment notes refer to Dr. Ketcham, they are sparse, difficult to read, unsigned, or show that Dr. Dismukes examined the plaintiff, and they include no examination notes from Dr. Ketcham. (Commissioner's brief, pp. 13-14). The treatment notes reflect treatment since early1966, when plaintiff was an infant (R. 920-21), but do not reflect the name of the practice or bear a heading including the names of the physicians. While it is not possible to tell from the records how many times Dr. Ketcham examined plaintiff personally, it is apparent that Dr. Ketcham is, in fact, plaintiff's treating physician.  Dr. Dismukes' notes are typewritten; the court assumes, for purposes of analysis, that all of the handwritten treatment notes are Dr. Ketcham's.

examination note for a 1997 hospitalization for pneumonia. (R. 907-30).[10] The notes

recording plaintiff's office visits consist of only a dozen pages. Dr. Ketcham first saw

plaintiff for a complaint of low back pain on January 24, 2005.  The note for that visit states

only "c/o low back pain – on Lotrel 10/20," and "Had death in family."  No examination is

recorded, other than for plaintiff's blood pressure, and no diagnostic testing was ordered.  Dr.

Ketcham prescribed Lortab. (R. 911).  A note for May 25, 2005, when plaintiff returned with

complaints of back trouble records plaintiff's blood pressure and states, "Wants more Lortab

10."  There are no further notes indicating examination, assessment or treatment. (R. 910).

On October 6, 2006, plaintiff returned complaining of low back pain.  His weight and

blood pressure are recorded, along with his current medication (Lotrel 10/20) and "NKDA"

(no known drug allergies).  A handwritten note, from a staff member other than Dr. Ketcham,

reads "c/o back trouble [low] back[.] [N]o surgeries[.] [F]elt (tremors?) while taking pt's BP

hands couldn't stop trembling – Note: gets Lortab from Dr. Ketcham."[11]  Plaintiff saw Dr.

Dismukes on this date.  Dr. Dismukes wrote:

> Mr. Williams is visiting from Andalusia.  He is on Disability because of his
> back problems. He states he has had injuries in the past. He has been evaluated
> with MRI's, etc. and has been told he has degenerative disc disease.  He says
> they have talked about surgery but he doesn't really want to have surgery.
> Apparently he has been going through pain management.  He has been taking
> Soma and Lortab.  He has pain in his back that radiates down into his legs. No

---

[10]  Plaintiff also submitted a treatment note for a visit to a dermatologist on October 1, 2009.  (R. 898-900).  Plaintiff raises no allegation of error as to the Appeals Council's consideration of these records.

[11]  Plaintiff had requested and received a prescription for Lortab 10 from Dr. Gacha four days earlier, on October 2, 2006.  (R. 828).

recent trauma. He doesn't feel like he needs repeat s-ray at the present time.

(R. 910).   On examination, Dr. Dismukes noted "[t]enderness in the midline and sacroiliac area" and "[s]tiffness with complaints of discomfort on manipulation of all planes. [Deep tendon reflexes] appear relatively equal bilaterally.   Negative [straight leg raises]."   He assessed "[c]hronic back pain."   He noted, "Unfortunately, I don't see Lortab or Soma[,]" and he prescribed Tylenol # 3 and Flexeril instead.  (R. 910).  Dr. Ketcham treated plaintiff for  congestion, cough and runny nose on December 8, 2006, and prescribed medications. Other than plaintiff's blood pressure, no examination results are recorded.  Dr. Ketcham next saw plaintiff over ten months later, when plaintiff returned complaining of lower back pain. Plaintiff reported that he "has been doing a lot of lifting that has caused the pain."   Dr. Ketcham's note reads "Wants Lortab 10 – wife has [illegible] cancer."  (R. 909).  Plaintiff next sought treatment on January 14, 2008, reporting right knee pain and swelling after he "stepped in a hole last wk" and, also, a productive cough.  No physical examination results are recorded.  Dr. Ketcham prescribed medications.  (Id.).

Plaintiff returned to Dr. Ketcham several months later, on July 3, 2008. He complained of chronic low back pain.  Dr. Ketcham wrote, "Dx HTN – Has damaged spine – No previous Back Surgery – Injured Back 2002 – + 1999 Not employed – Back worse [with] sitting + prolonged standing." (R. 909).  Dr. Ketcham did not record any examination results, assessment or treatment.  (Id.).

Plaintiff returned to the office on May 18, 2009, over ten months later, complaining

of allergy symptoms and chronic back and right knee pain.  His blood pressure was measured at 180/102 and he reported being out of blood pressure medications for two to three months. (R. 908). There are no notes indicating that he was examined by a physician on this occasion, but a pharmacy printout reflects prescriptions for Hydrocodone (Lortab) and Carisoprodol (Soma) filled on this date.  (R. 907-08).  Dr. Ketcham's office called in a prescription for Soma, 350 mg, to CVS pharmacy one month thereafter, on June 16, 2009.  (Id.).[12]  Plaintiff returned to Dr. Ketcham on September 16, 2009.  He complained of right knee and lower back pain.  Dr. Ketcham wrote, "– Has old Rt Knee & Back – states he is unable to work – No Job Five Years[.]" (R. 908).  As in previous visits, the only examination result recorded is plaintiff's blood pressure.

Three days later, on September 19, 2009, Dr. Ketcham signed a medical source statement form and a clinical assessment of pain form. He concluded that – due to his chronic back pain – plaintiff can sit for four hours, stand or walk for two hours, and lift twenty pounds occasionally and ten pounds frequently in an eight-hour work day.  He included non-exertional limitations and predicted that plaintiff would be absent from work more than three times each month. He circled responses on the pain form indicating his opinion that plaintiff's "pain is present to such an extent as to be distracting to adequate performance of

---

[12]  On a page including a printout of plaintiff's prescription drug history from the "Alabama Prescription Drug Monitoring Program" showing Dr. Ketcham's prescriptions for Lortab and Soma with Dr. Gacha's prescriptions for the same drugs during the same time period, there is a note indicating that plaintiff requested a prescription for Soma on July 15, 2009 which was denied.  A September 15, 2009, request for Lortab 10 mg is marked through with an "X."  (R. 907).

18

daily activities," that physical activity will result in "[g]reatly increased pain and to such a degree as to cause distraction from task or total abandonment of task," and that "[s]ignificant side effects may be expected [from prescribed medications] which may limit effectiveness of work duties or performance of everyday tasks, e.g. driving."  (R. 905-06).

As noted above, the Appeals Council considered the evidence[13] but determined that it "does not provide a basis for changing the Administrative Law Judge's decision." (R. 603-604, 606, 901-30).  Dr. Ketcham's opinion is not supported by his treatment notes which, as described above, include very limited examination results; the opinion appears to be based primarily on plaintiff's subjective complaints.  (See R. 908).  The evidence submitted to the Appeals Council does not deprive the ALJ's decision of substantial evidentiary support.  The court finds plaintiff's allegation of Appeals Council error without merit.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and proper application of the law. Accordingly, the decision is due to be AFFIRMED.  A separate judgment will be entered.

DONE, this 31st day of August, 2011.

---

[13] Plaintiff devotes a portion of his brief to arguing that the evidence is "material." (Plaintiff's brief, pp. 6-7).  The Appeals Council agreed, apparently, since it considered the evidence. See 20 C.F.R. § 404.976(b)(1)("The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision.").  However, to the extent plaintiff contends that this evidence may form the basis for a "new evidence" remand from this court (see Plaintiff's brief, pp. 6-7), he is incorrect. See Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253 (11th Cir. 2007).

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE